## Commonwealth v. Davies

*Roger B. Reynolds,* assistant district attorney, for Commonwealth.

*Joseph L. Prince,* for defendant.

CORSON, J., May 18, 1950.—Defendant comes before this court upon appeal from summary conviction, charging defendant with violation of section 719 of the Act of June 3, 1937, P. L. 1225, as amended by the Act of April 13, 1942, P. L. 28, 34 PS §1311.719, commonly known as The Game Law.

After hearing, the record was brought before the court en banc for decision. From the testimony it would appear that some of the facts, at least, are as follows: Defendant, hereinafter referred to as Davies, owns and occupies a farm of 125 acres in New Hanover Township. Davies uses this farm partly to maintain and train hounds. On October 4, 1949, 60 such dogs were maintained on this farm. Davies has a kennel license. On October 4, 1949, a deputy game protector, hereinafter referred to as Schell, while working two farms away from the Davies farm, saw three dogs chasing pheasants. Again, on October 6, 1949, Schell, while working near the Hanover airport, saw several dogs running around in the brush and flushing pheasants. Later Schell, in company with another game protector, visited the Davies farm, where, he testified, he saw the dogs that he had previously seen chasing pheas-

ants. Then Davies was fined $10 and costs in summary proceedings before a justice of the peace. The present appeal followed.

Section 719 of the Act of June 3, 1937, supra, is the section under which Davies was charged and convicted before the magistrate. The first paragraph of this section makes it unlawful for the owner of any dog to permit his dog to track or chase any wild game between April 1st and August 19th. There is an exception as to foxes which has no application here. The first part of this paragraph obviously has no application since the act complained of did not take place within the dates set forth in the first paragraph.

Paragraph 2 of the same section says:

". . . dogs, when accompanied by and under control of their owner or handler, may be trained upon any game in this Commonwealth, except elk, deer, or bear, or wild turkey, from the twentieth day of August to the thirty-first day of March next following. . .".

"Under control" is then defined to mean "within call except when actually on a trail or track of legal game". The last part of the section provides that any person who shall train a dog or permit a dog owned by him "to pursue or follow upon the track of any small game, or other bird or animal, except elk, deer or bear, contrary to the foregoing provisions, shall, upon conviction, be sentenced to pay a fine of ten dollars and costs. . . ." The important part of this section is "contrary to the foregoing provisions". Nowhere in the "foregoing" part of the section is there any prohibition against owners allowing their dogs to run loose and chase game during the period when dogs may be trained upon game during the period "from the twentieth day of August to the thirty-first day of March next following". The alleged offense in the present case took place within that period. The very fact that hunters are given the privilege of training their dogs upon pheasants and

all other game except elk, deer, etc., certainly implies the right to allow their dogs to chase such game. "Under control" apparently means that the dog only has to be under control until it begins trailing legal game. "Legal game", we feel, means game upon which dogs may be trained during the period August 20th to March 31st following. Any other construction would make every man a criminal whose pointer "broke point" and chased a pheasant or whose beagle hound trailed a rabbit beyond the hearing of his master's voice. The dogs in the present case must be found to have been trailing legal game as is defined in section 719. Under such circumstances the dog was not required to be under control of its owner or handler. Such trailing or chasing on October 4th, therefore, did not constitute any illegal act upon the part of Davies, the owner of the dogs.

Upon the merits of the case Davies contended that he had been training his hounds upon fox; that two foxes had been started, and the hounds split up. Obviously, Davies could not have followed two set of hounds. If such hounds, on their way back to the kennel, should do a little training of their own upon pheasants, obviously it did not make Davies a violator of The Game Law, supra, and, for practical purposes, did no harm to the pheasants. While a cat or a fox may, on occasion, catch a pheasant, yet we have never heard of a pheasant having been caught or injured by a dog, fox hound, or otherwise. In October the pheasants are full grown and if they are chased a little before the opening of the hunting season it may only contribute to their safety when real hunting begins.

The burden of proving that defendant violated section 719 of The Game Law, supra, rests upon the Commonwealth: Com. v. Ludwig, 43 Montg. 133 (1927). The Commonwealth has not met the burden.

And now, May 18, 1950, defendant is found not guilty.